**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARL MONZO, individually and on behalf of** | : | |
| **CROWDRX, INC.** | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 17-01401** |
| | : | |
| **ANDREW BAZOS, M.D.** | : | |
| **Defendant.** | : | |

**MCHUGH, J.**                                                    **October 26, 2017**

## MEMORANDUM

This case arises out of a dispute over a business partnership that fell apart shortly after it

began, leading to a fight over the pieces. Both parties initiated litigation in Pennsylvania state

court, and then seemingly reached an agreement resolving the matter in the form of a

memorandum of understanding. A dispute quickly broke out as to whether the agreement was

self-executing. This led one partner to amend his complaint in his state case, and the other

partner to file a separate action in federal court in New York, which included trademark claims

based upon rights allegedly conferred by the parties' agreement. The first partner promptly

amended his state court action again to assert trademark claims there as well, and the case was

then removed to this Court.[1] With litigation now pending in two federal district courts—here

and in the Southern District of New York—I have before me a motion to dismiss, stay, or

transfer this case to New York under the "first-filed rule" and 28 U.S.C. § 1404(a), and to

dismiss on several related grounds. For practical purposes, the controlling issue is whether the

date an action was commenced in state court is properly considered in determining which action

---

[1] The timeliness of the removal has not been raised.

1

was first-filed, as opposed to a rule that only federal filings count.  Because I am persuaded that state filings should be considered, and because these cases arise from an integrated dispute, I will deny the motion in its entirety.

## I.  Background: The Disagreement and Litigation

Plaintiff Carl Monzo, a Pennsylvanian, and Defendant Andrew Bazos, a resident of Connecticut, both run businesses that provide medical services for professional sporting events, music festivals, and other large events.  Monzo's businesses are Pennsylvania-based while Bazos's operate  in the New York City region.  In 2015, the two entered a Shareholders' Agreement to merge their respective medical services businesses to form "CrowdRx, Inc., a Pennsylvania Corporation" [hereinafter "CrowdRx-Pa"].  Under the agreement, Monzo and Bazos wholly owned the corporation in equal shares.

The partnership soon faltered, and by early 2016 Monzo and Bazos had filed complaints against each other in Pennsylvania state court—the Delaware County Court of Common Pleas— asserting various state and common law claims based on their Shareholders' Agreement and seeking emergency injunctive relief.  Monzo's allegations included that Bazos "failed to forward revenues generated by New York events [Bazos] controlled to [CrowdRx-Pa]," removed information related to Monzo from the CrowdRx-Pa website, and locked Monzo out of the company's Google Docs account.  *See* Pl.'s Compl. ¶¶ 15, 28–30, *Monzo v. Bazos*, No. 16-3179 (Del. Cnty. Ct. Comm. Pl. 2016).  To resolve Monzo's emergency motion, the parties stipulated on May 10, 2016 "not to unilaterally change the content of the website" or to access the Google Docs account unless the parties agreed in advance by email.  Stip. 55, ECF No. 6-2.

On November 10, 2016, with both state cases still pending, Monzo and Bazos signed a Memorandum of Understanding (MOU) setting out a division of CrowdRx-Pa's assets and

clients "as of the Effective Date"—a phrase that has turned out to be crucial. *See id.* at 58. If and when the MOU went into effect, Bazos would own the CrowdRx trademark, website, and exclusive rights to several clients, including Mysteryland and Electric Zoo (two music festivals). Monzo, in turn, would have exclusive rights to his own roster of clients but would no longer own CrowdRx-Pa.

Bazos proceeded as though the MOU had already taken effect. In December 2016, he blocked Monzo and his employees from accessing the CrowdRx-Pa email server and removed all mention of Monzo from its website. In response, Monzo filed an Amended Complaint in his Delaware County case, again seeking emergency relief. He alleged that Bazos's actions violated the Shareholders' Agreement, the Stipulation, the MOU, and common law duties. Two weeks later, Bazos filed in the Southern District of New York ("S.D.N.Y.") alleging trademark and unfair competition claims under federal and New York laws. S.D.N.Y. Compl., ECF No. 6-1. Monzo later amended his complaint in the Delaware County case (the "Second Amended Complaint") to include his own trademark claims and to seek declaratory judgment and indemnification.[2] Most recently, after filing his own case in New York, Bazos removed Monzo's Delaware County case to this Court.

Disagreement over the meaning of at least two paragraphs in the MOU—"Termination of Relationship"[3] and "Definitive Documents"[4]—forms the central dispute in this and the S.D.N.Y

---

[2] Monzo's claim for declaratory judgment alleges that Bazos misrepresented his relationship with two clients (Mysteryland and Electric Zoo) during the MOU process. The indemnification claim seeks a court order that Bazos must indemnify Monzo against any fines by a regulatory agency and any judgment arising from the "Sky Medical action" (in which Bazos is a defendant). Pl.'s Second Am. Compl. ¶¶ 132–139 (referencing the Sky Medical complaint, ECF No. 4-9).

[3] It read: "All agreements by and between the parties, whether oral or written, shall terminate immediately upon the execution of [the Definitive Documents] . . . [which] shall include the terms and conditions set forth in this non-binding term sheet. The separation of the parties pursuant to the Shareholder's Agreement is effective for financial and operational purposes as of March 31, 2016. ('The Effective Date')".

case.  Monzo asserts that the MOU was not self-executing because it would take effect only if and when the definitive documents were signed, which they were not.  Bazos argues that the MOU was self-executing such that CrowdRx-Pa had already "ceased operationally and financially" and that he owned the trademark.

Defendant Bazos moves to dismiss, stay, or transfer this case to the S.D.N.Y.[5] based on the first-filed rule, which holds that, when two cases are pending in federal courts, the first-filed case should generally be the one to proceed.  Alternatively, Bazos seeks a transfer under 28 U.S.C. Section 1404(a).  He also seeks dismissal on several other grounds, many of them contingent on the assertion that CrowdRx-Pa no longer exists:

- under Federal Rule of Civil Procedure 12(b)(7) for failure to join an indispensable party (CrowdRx-NY) pursuant to Rule 19;
- under Rule 12(b)(6) for failure to state a claim;
- under Rule 12(e) for lack of factual specificity;
- under 28 U.S.C. § 2201 for failure to state a claim for declaratory judgment;
- under Rule 23.1 for failure to state a claim for a derivative action;
- under 28 U.S.C. § 1406(a) for improper venue.

The parties' briefing focuses primarily on the first-filed rule and I will do the same.

## II. Bazos's Motion to Transfer/Stay/Dismiss under the First-Filed Rule

The first-filed rule holds that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."  *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)).  The rule "encourages sound judicial administration and promotes

---

[4] It read:  "This Term Sheet is a binding agreement on any Party to proceed with the transactions contemplated hereby and will not impose any obligation or liability on any such Party if the transactions contemplated herein are not consummated.  Any such agreement will be made only if and when definitive documents containing such agreements are agreed to and executed . . .".

[5] My colleague in New York has stayed the S.D.N.Y. case pending this decision.

comity among federal courts of equal rank" by giving courts discretion to enjoin a later-filed case if it "involve[s] the same parties and the same issues already before another district court." *Id.* at 971. The first-filed rule thus aids in the "prompt and efficient administration of justice" and avoids the economic waste and risk of conflicting judgments inherent in duplicative litigation. *Crosley*, 122 F.2d at 930; *see also E.E.O.C.*, 850 F.2d at 971 (explaining that "the letter and spirit of the first-filed rule . . . are grounded in equitable principles" and its "primary purpose is to avoid burdening the federal judiciary and . . . the judicial embarrassment of conflicting judgments.").

If a court determines that the first-filed rule applies to a pair of cases, "there is a presumption that the later-filed action should be dismissed, transferred, or stayed." *Landau v. Viridian Energy PA*, No. CV 16-2383, 2017 WL 1232313, at *3 (E.D. Pa. Apr. 3, 2017) (citing *Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 403 (E.D. Pa. 2005)). But a judge's authority to enjoin a second-filed case "is not a mandate directing wooden application of the rule." *E.E.O.C.*, 850 F.2d at 972. Rather, it is a flexible standard motivated by equitable principles and practical considerations—"[d]istrict courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *Id.* Courts in this Circuit have recognized several such exceptions, including when the second-filed action has developed further than the first, and when there is evidence of anticipatory filing, improper forum shopping, gamesmanship, or other bad faith by the first filer. *Id.* at 976–77.

The scope of the first-filed rule—exactly *how* related the cases must be for the rule to apply—has mostly developed in the district courts, without a definitive ruling from the Third Circuit. As I recently discussed in *Landau*, two interpretations have emerged:

> Some courts take a narrow view of the first-filed rule and apply it only when the parties and claims in the later-filed suit are a 'mirror image' of the first. Others have embraced a

broader, close-enough-for-government-work approach to the rule and applied it to 'disputes involving similar, concurrent actions.' According to proponents of the broader approach, the 'substantive touchstone of the first-to-file inquiry is subject matter,' rather than identity of legal claims or parties.

2017 WL 1232313, at *2–3 (citations omitted). I attempted to reconcile these interpretations as follows:

> [T]here are two distinct scenarios where the [first-filed] rule has been applied. The first-filed rule started with cases . . . where earlier- and later-filed actions involved the same parties and arose out of the same transaction, agreement, or encounter. Only later was it extended to cases that were not truly related but raised similar issues. In cases where two actions arise out of an integrated dispute, transfer, stay, or dismissal of the later-filed action should be required in the absence of exceptional circumstances. . . . Such cases are genuinely related, in the technical sense, making transfer (where it is sought) an obvious remedy. As a matter of simple logic, however, the rule does not carry the same force when (1) different parties are involved, (2) the underlying dispute involves similar but not identical issues, and (3) the controlling law is from different jurisdictions. Any relationship between such cases is necessarily more attenuated. Faced with that scenario, courts import § 1404 [governing Change of Venue] into the analysis, implicitly recognizing the weakness of the relationship between cases.

> In my view, clarity is served by explicitly recognizing a two-tiered approach to the first-filed rule. In truly related cases, transfer to the jurisdiction with the first-filed case should be presumed. Otherwise, the existence of an earlier-filed case that is similar, but not identical, should be a relevant, but not controlling, factor to consider as part of § 1404 transfer analysis.

*Id.* at *3.

This case raises an additional threshold question under the first-filed rule: in deciding which case was filed first, should courts credit the date a case was filed in state court, or the date it was removed to federal court? The Third Circuit has not ruled on this issue and district courts in the circuits are split. For reasons set out below, I conclude that it is the date of filing in state court, rather than the subsequent removal date, that matters for purposes of the first-filed rule.

Many courts in this district and around the country credit the filing date of a state action rather than its date of removal for purposes of the first-filed rule. *See, e.g.*, *Unlimited Tech., Inc. v. Leighton*, No. CV 17-1913, 2017 WL 3052980, at *5 (E.D. Pa. July 19, 2017) (Savage, J.);

*Law Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 723 (E.D. Pa. 2015) (Kearney, J.); *PhotoMedex, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. CIV.A 09-00896, 2009 WL 2326750, at *4 n.5, *7–8 (E.D. Pa. July 28, 2009); *Country Home Prod., Inc. v. Schiller-Pfeiffer, Inc.*, 350 F. Supp. 2d 561, 570 (D. Vt. 2004); *Igloo Prod. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990); *Diversified Metal Prod., Inc. v. Odom Indus., Inc.*, No. 1:12-CV-00162-BLW, 2012 WL 2872772, at *3 (D. Idaho July 12, 2012) (reciting a list of California and other district courts that have held the same); *see also Owens v. Ohio Cent. R. Co.*, 20 F. 10, 15 (C.C.D.W. Va. 1884) (predating the first-filed rule as it is called today, but adhering to the same principles and deeming the state court filing the start date of a later-removed case); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1173 (11th Cir. 1982) (not only crediting the state filing date, but relinquishing jurisdiction under the first-filed rule to a state court where the case was never removed to federal court).  Notably, Bazos's chosen forum, the Southern District of New York, would also credit the state filing had he filed this motion there.  *See Mfrs. Hanover Tr. Co. v. Palmer Corp.*, 798 F. Supp. 161, 166 (S.D.N.Y. 1992).

Not only does the weight of authority support crediting the state filing date, but I find the reasoning behind those decisions highly persuasive.  As Judge Savage succinctly stated:

> How a case is treated after removal warrants relying on the state filing date.  Once a case is removed, the federal court takes it as it is.  The case proceeds as if it originally had been brought in the federal court.  It does not start anew.  The district court gives effect to state court rulings made prior to removal.
> The removal petition relates back to the date the state court action was filed.  Repleading is not necessary.  The time within which the removing defendant must answer the complaint is calculated from the date the initial pleading in state court was served.  *See* Fed. R. Civ. P. 81(c)(2).  Likewise, the statute of limitations is tolled upon filing the state court action even if the action was removed after the limitations period had expired.
> . . . The better approach is to relate the removal date back to the state court filing date.

*Unlimited Tech.*, 2017 WL 3052980, at *4 (citations omitted).  The Southern District of New York likewise reasoned that "[t]he principles underlying removal also weigh in favor of the state filing date" in that "after removal, . . . [t]he removed case proceeds . . . as though it had been commenced originally in the federal court." *Mfrs. Hanover Tr. Co.*, 798 F. Supp. at 166 (citing 14A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3738 at 556–57 (1985).  It strikes me as anomalous that the federal court system would follow procedural continuity in removed cases in all other contexts except for the first-filed rule.

Defendant Bazos is correct that several courts have held originally filed federal actions take precedence over subsequently removed actions even though the removed state court case was filed earlier—specifically, *Just Born, Inc. v. Summit Foods Enterprises*, No. CV 13-7313, 2015 WL 996380, at *2 (E.D. Pa. Mar. 6, 2015); *Schulmerich Bells, LLC v. Jeffers Handbell Supply, Inc.*, No. CV 17-0275, 2017 WL 697913, at *2 (E.D. Pa. Feb. 21, 2017); and *North American Communications, Inc. v. Homeowners Loan Corp.*, No. CV 3; 2006-147, 2007 WL 184776, at *3, n.1 (W.D. Pa. Jan. 22, 2007).  Each holds that the first-filed rule credits the date on which a state case was removed to federal court rather than the date it was originally filed in state court.[6]  But a closer look at these cases gives scant support to the idea that the first-filed rule should ignore state filing dates.

The Eastern District cases relied on a single footnote in *Homeowners*, a Western District case.  That Western District case, in turn, relied on the Third Circuit's opinion in *E.E.O.C.*, which did not in any respect address the treatment of state cases under the first-filed rule.  *See Homeowners*, 2007 WL 184776, at *3 n.1 (citing *E.E.O.C.*, 850 F.2d 969, which applied the first-filed rule to two cases originally filed in federal court).  The Court in *Homeowners*

---

[6] In my research, I identified an additional case from this district, not cited by Bazos, holding the same: *Hemmerich Indus., Inc. v. Courtland Mfg.*, No. CV 87-8272, 1988 WL 48574, at *1–2 (E.D. Pa. May 13, 1988).  But *Hemmerich*, like the more recent cases Bazos cites, is not based on binding authority.  *See id.*

seemingly attached significance to general language in *E.E.O.C* about the rule's purpose: "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank." *See E.E.O.C.*, 850 F.2d at 971. I find nothing in this general language that bears on whether a state filing date may be considered, and that issue was not before the Court.

I also disagree with the rationale of those cases insofar as they would disregard the plaintiff's choice of forum. The *Homeowners* Court acknowledged that, under its interpretation of the rule, "for all practical purposes, the onus is upon the competing parties to file their respective civil actions first in a federal district court." 2007 WL 184776, at *3. The court in *Just Born* suggested that "the plaintiff in a state civil action can avoid being the second-filed matter by simply filing a complaint in a federal district court, not a state trial court at the outset." 2015 WL 996380, at *2. I am persuaded by Judge Savage's caution that "[t]his suggestion supposes that the plaintiff in the state court action anticipates that the defendant will be filing a federal action in another district. It ignores the plaintiff's choice of forum and assumes that a defendant will always be looking to file its own federal action." *See Unlimited Tech.*, 2017 WL 3052980, at *5. Given that the first-filed rule is procedural in nature – dealing with efficient judicial administration – rather than substantive, it should not be applied in a way that undermines the plaintiff's traditional prerogative to choose the forum. [7]

A. <u>The first-filed rule applies because this case and the S.D.N.Y. case are truly related.</u>

Because both parties assumed state filing dates are irrelevant, my contrary holding has the practical effect of rendering their briefs patently unhelpful to their respective positions.[8] Bazos, invoking the few cases that credit removal dates over state filing dates, bases his motion

---

[7] *See PhotoMedex, Inc*., 2009 WL 2326750 (E.D. Pa. 2009) at *4 n.5 "[T]here are sound policy reasons for using the date of the state court filing rather than the date of removal for purposes of establishing chronology." (Yohn, J.)

[8] For scriptural scholars, the situation mirrors that of Haman and Mordecai. 7 *Esther*

on the assumption that his S.D.N.Y. case was first-filed and spends pages explaining how the cases are "substantially related" so that the first-filed rule should apply.[9]  Mot. Dismiss 7–8. Monzo counters that Bazos effectively waived his right to request a transfer when he failed to object to venue in the state case, and argues that "despite some subject matter overlap," the cases are "not substantially identical" so as to trigger the first-filed rule.[10]  Pl.'s Resp. 1, 6, ECF No. 9. In reaching my decision, however, I rely not on these unintended admissions, but on the substance of the cases themselves.

These two cases are "truly related" because the central issue in both is the interpretation of the parties' MOU.  In short, two men are suing each other in different states over the same business dispute.  Nearly all of the claims here and in the S.D.N.Y. case hinge on the same substantive questions of contract interpretation: did (and do) either party's actions relating to CrowdRx-Pa violate the MOU or the Shareholders' Agreement?  If the MOU was self-executing, it supersedes all previous written agreements, including the Shareholders' Agreement, and Bazos is now the sole owner of the CrowdRx trademark, website, and certain assets.[11]  *See* MOU 2.  If the MOU was not self-executing, but was instead a "non-binding term sheet" effective only "upon execution of a Separation and Release Agreement," then the Shareholders' Agreement continues to bind the parties and determine the legality of their respective conduct.  *See id.*

_____

[9] Bazos writes: "The first-filed rule applies because the two actions are substantially related.  The gist of the . . . New York action is ownership and infringement of a federally registered trademark brought by the registered trademark owner.  Likewise, the gravamen of this case is ownership and infringement of a purported trade dress that includes the very same trademark" and "both cases involve the subsequent termination of [CrowdRx-Pa] and issues regarding the interpretation and enforcement of the MOU." Def.'s Mot. Dismiss 7.

[10] Monzo argues in the alternative that, even if the first-filed rule does apply, the S.D.N.Y. case (assuming it is deemed first-filed) falls into an exception because Bazos's filing was "in bad faith, forum shopping and an example of gamesmanship."  Pl.'s Resp. 6–7.  Because I now hold that Monzo's case was first-filed, this argument is irrelevant.

[11] I cannot reconcile these facts with Plaintiff Monzo's assertion that Bazos's trademark claims "in the New Yrok [sic] action do not relate to breaches of the Shareholder's Agreement, the MOU or the duties owed by Bazos."  Pl.'s Resp. 6.

The MOU forms the foundation for all of Bazos's claims: declaration of ownership of the trademark (Count I), trademark infringement under Sections 32 and 43(a) of the Lanham Act (Counts II and III), violations of New York's business law (Counts IV and V), and his common law infringement and unfair competition claim (Count VI). *See* S.D.N.Y. Compl. ¶¶ 38–105. The MOU interpretation likewise determines nearly all of Monzo's claims: misappropriation of trade dress (Count I), trademark infringement under Section 43(a) of the Lanham Act (Count II), misappropriation of assets (Count III), request for declaratory judgment relating to Mysteryland and Electric Zoo (Count IV),[12] breach of duty of loyalty by pirating trade dress (Count VI), breach of implied covenant of good faith and fair dealing (Count VII), unfair competition (Count VIII), and conversion of the CrowdRx-Pa trade dress, website, email, Facebook page, and Google Docs account (Count IX). *See* Am. Compl. ¶¶ 100–169, ECF No. 4. Between both suits, the only claim that may not turn on interpretation of the MOU is Monzo's claim for indemnification ("Count X").[13] *See id.* ¶¶ 136–139.

Although the parties named their claims differently and invoked the laws of different states, the cases' substantive overlap reveals that they do more than "raise[] similar issues"—they raise a single, identical issue. *See Landau*, 2017 WL 1232313, at *3; *Consol. Rail Corp. v. Grand Trunk W. R. Co.*, 592 F. Supp. 562, 569 (E.D. Pa. 1984) ("[T]he complaints appear at first glance to raise different issues for adjudication. However, when one pierces the pleadings and

---

[12] Unlike the other claims, which turn on whether the MOU was self-executing, this claim will require the Court to determine whether Bazos misrepresented his relationship with these clients in the MOU. *See* Pl.'s Am. Compl. ¶¶ 132–135, ECF No. 4; MOU at 2 "Distribution of Assets").

[13] The MOU includes a detailed distribution of CrowdRx-Pa's assets but, regarding the corporation's liabilities, says only that they will be "agreed upon following Audit." MOU 2. Therefore, even if the MOU were self-executing, it apparently would not resolve the question of liabilities like the Sky Medical litigation (and any indemnification for it), which seems to have existed at the time the MOU was signed. I will not attempt to further dissect Monzo's indemnification claim at this stage. I instead hold that, to the extent that the indemnification claim arises from questions different from those that underlie the other claims, the cases remain genuinely related. (This Count is mistakenly labeled and is in fact the fifth claim alleged.)

views the complaints in light of the surrounding circumstances, it is clear that both cases present the same issues for resolution."). Nearly all of the parties' claims turn on the narrow question of whether the MOU was self-executing. It is clear, then, that both cases involve the "same issues," *E.E.O.C.*, 850 F.2d at 971, and "arose out of the same transaction, [or] agreement" and are thus "genuinely related," *Landau*, 2017 WL 1232313, at *3. To allow two federal courts to expend time and resources resolving this single question would be wasteful and inefficient, and create the possibility of conflicting results. Moreover, because resolution of this case will resolve all claims in the S.D.N.Y. case, this first-filed action should be the sole case to proceed. *See id.* (dismissing an action in this District because "the entire controversy [could] be decided" by concurrent litigation in the first-filed forum); *Catlin Specialty Ins. Co. v. Plato Const. Corp.*, No. 10-5722, 2012 WL 924850, at *5 (D.N.J. Mar. 19, 2012) ("[T]he decision rendered in this Court would determine the outcome in the New York litigation, and the opposite is true as well. . . . [T]his is precisely the result that the first-filed rule is intended to avoid.").

Any assertion that the first-filed rule does not apply because the cases "do not involve the same parties" rings hollow.[14] In *D & L Distribution, LLC v. Agxplore International, LLC*, another trademark infringement case, the court held that a company's former employee was sufficiently similar to the company itself to meet the first-filed rule's identity-of-parties requirement because they had a "symbiotic relationship." 959 F. Supp. 2d 757, 769 (E.D. Pa. 2013). Here, Monzo, on behalf of himself and "CrowdRx, Inc.," sued Bazos as an individual. In the S.D.N.Y. action, Bazos brings claims as "CrowdRx, Inc., a New York Corporation" against Monzo and three entities wholly under Monzo's control. If a former employee can stand in for a company for purposes of the first-filed rule, surely the current, sole owner of a company can stand in for the company and vice versa. *See D & L Distrib.*, 959 F. Supp. 2d at 769. The

---

[14] Consistent with the now-flipped briefings, it is Monzo who makes this argument. *See* Pl.'s Resp. 7

argument is further belied by the MOU, which describes Monzo and the companies he owns (the same three Bazos names in the S.D.N.Y. action) as "the Monzo Parties," and refers to Bazos and "CrowdRx NY" as the "Bazos Parties." MOU at 1. There is no dispute over this portion of the MOU, which reinforces the obvious—that these cases are, at base, the same two men (Monzo and Bazos) suing each other. To distinguish the cases based on party names would be unsupported by case law, and would place form over substance in contravention of the goals of the first-filed rule.

B. <u>Under the rule, this action is the first-filed.</u>

As explained above, I hold that Monzo's prior filing in state court, rather than the date on which Bazos removed it to this Court, is relevant for the first-filed rule analysis. Perhaps anticipating such a ruling, Bazos correctly points out that Monzo did not add his trademark claims to the state action until after Bazos filed the S.D.N.Y. action. Mot. Dismiss 5, 7 n.6. Bazos seems to imply that, when Monzo's case was initially filed, it was not substantially similar to Bazos's (later-filed) S.D.N.Y. case. While it is true that Monzo's most recent amendment created greater overlap between the claims made in the two cases, it did not mark the moment at which the two cases became related. Rather, by January 25, 2017—after the MOU was signed and well before Bazos filed in New York—Monzo had placed the MOU (and its interpretation) squarely at issue in the state case. *See* Pl.'s Del. Cnty. (First) Am. Compl. ¶¶ 34–42 and accompanying Second Motion for Emergency Equitable Relief ¶¶ 32–40.

Like the current Complaint, Monzo's January 2017 Complaint alleged that Bazos had locked Monzo out of CrowdRx-Pa's website, email, and Google Docs account—all in contravention of the Shareholders' Agreement, the parties' May 10, 2016 stipulation, and the MOU, which incorporated both. *See id.* Then, as now, the issue of whether the MOU was self-

executing was central to the case.[15]  Monzo's subsequent addition of trademark claims merely added another issue to be resolved by interpretation of the MOU.

   C.  No exception to the first-filed rule applies.

Although "appropriate circumstances justify departure from the first-filed rule," there is no evidence or even argument here that "such extraordinary circumstances exist." *See D & L Distrib.*, 959 F. Supp. 2d at 766.  The burden of showing that an exception applies falls to the party opposing application of the rule.  *Id.*  It is not surprising that Bazos has not argued for an exception, since he insists that the rule *does* apply—relying, of course, on his assumption that the S.D.N.Y. case would be deemed the first-filed, which I reject.  But looking beyond the arguments to the facts alleged and evidence presented, I see no suggestion of gamesmanship, forum shopping, or bad faith by Monzo.  *See E.E.O.C.*, 850 F.2d at 976–77.  Thus, no exceptional circumstances warrant a departure from the rule.

Analyzing the substance and evolution of the parties' respective cases, I find that they are related and the first-filed rule thus applies.  And, in light of the weight of authority and policy considerations, I consider Monzo's state filing date and hold that his case was the first-filed so that neither dismissal nor transfer to New York is appropriate.


**III. Bazos's Remaining Grounds for Dismissal/Transfer**

Bazos moves to dismiss or transfer this case on several additional, related grounds.

   A.  Several of Bazos's grounds for transfer and dismissal fail because they assume that the case's central issue has already been decided in his favor.

Most of Bazos's remaining requests for dismissal or transfer rely on his assertion that

---

[15] For example, Monzo attached to his emergency motion a Dec. 30, 2016 email from his attorney, Patrick Henigan, to Bazos's counsel:  "The NES people [a group of Monzo's employees] have been completely cut off from email and the website is not compliant with the [MOU] . . . .  Please instruct Dr. Bazos . . . to immediately restore the site so that it is consistent with the [MOU].".

CrowdRx-Pa has ceased to operate pursuant to the MOU. *See, e.g.*, Mot. Dismiss 15–16

("Monzo has also agreed that CrowdRx-Pa ceased to operate as of March 31, 2016 and that it no

longer has any customers since the customers have been divvied up between the principals.").

Monzo, of course, disputes this. *See* Pl.'s Resp. 5–6 ("[CrowdRx-Pa] continues as an operating

entity in order to service [its] contractual obligations."). As discussed above, the status and

ownership of CrowdRx-Pa, as determined by the interpretation of the MOU, is the crux of both

pending cases. Bazos thus asks the Court to dismiss Monzo's Complaint by assuming the key

issue has already been decided in Bazos's favor. I must decline to do so[16] and accordingly deny

Bazos's request for transfer under Section 1404, and his motion to dismiss for failure to state a

claim, lack of factual specificity, and improper venue.

B. <u>Bazos has not shown that CrowdRx-NY is a required party under Rule 19.</u>

     I am likewise not persuaded that, in choosing to name Bazos as a defendant, and not

Bazos's company, CrowdRx-NY, Monzo has failed to name a required party under Rule 19(a).

*See* Mot. Dismiss 14. Rule 12(b)(7) provides for dismissal for failure to join a "required party,"

as outlined Rule 19(a). As the party advocating for joinder of CrowdRx-NY, Bazos has the

burden of showing that it is a required party. *See Feuerstein v. Simpson*, 582 F. App'x 93, 99 (3d

Cir. 2014). Bazos has not met that burden; he does not specify which part of Rule 19(a) he is

invoking, nor does he cite any case law. It appears that subparagraph (a)(1)(A) might be

relevant—it requires joinder, where feasible, of any party without whom "the court cannot

accord complete relief among existing parties." But "the Rule 19(a)(1) inquiry is limited to

whether the district court can grant complete relief to the persons already parties to the action"

---

[16] Not only do Rules 12(b)(6) and (7) require me to construe all facts in favor of the plaintiff, *see Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 805 (3d Cir. 2003), but I also take judicial notice of the fact that CrowdRx, Inc. remains a registered corporation in Delaware County, Pennsylvania, most recently certified in September 2017.

and "[t]he effect a decision may have on the absent party is not material." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993). I see no reason that CrowdRx-NY's absence would limit my ability to afford complete relief to Monzo and Bazos, and Bazos has articulated none.

C. <u>Monzo may amend his outdated caption.</u>

Bazos points out that Monzo's current Complaint purports to bring an action "on behalf of CrowdRx-Pa," yet does not comport with the Rule 23.1 pleading requirements for derivative actions. Mot. Dismiss 19. Monzo responds that the caption is merely a "carryover" from the Delaware County case, and that this case is now a direct action. He seeks leave to amend the caption, which I now grant. I will deny this portion of Bazos's motion as moot.


_____/s/ Gerald Austin McHugh____
United States District Judge